UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:15-CR-00028-GNS-3

UNITED STATES OF AMERICA                                                                                    PLAINTIFF

v.

DANNY NEAL STOKES                                                                                             DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Objection (DN 72) and Plaintiff's Objection (DN 76) to the Magistrate Judge's Findings, Conclusions of Law, and Recommendations regarding Defendant's Motion to Suppress Evidence. For the reasons stated below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation, and **OVERRULES** the objections.

### I.      STATEMENT OF THE CASE

This is an action by the United States charging Defendant, Danny Neal Stokes, and two co-defendants with conspiracy to intentionally possess with the intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. § 841(b)(1)(A)(viii). (Indictment 1, DN 13). In addition, Stokes is charged with knowingly and intentionally possessing with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(viii). (Indictment 3).

On the day Stokes was arrested, the police received a tip from a co-defendant ("Informant"). The Informant told a Detective Harper he had seen Stokes on July 25, 2015, at a

horse track in Franklin, Kentucky, with approximately six ounces of methamphetamine and over $100,000 in cash in his possession, and also described Stokes' vehicle. (R. & R. 2, 6-7, DN 70). Detective Harper informed Kentucky State Police Officer Duvall. (R. & R. 2). Officers then observed Stokes leaving the racetrack, and Officer Duvall, Warren County Sheriff Deputy Hargett, and Deputy Hargett's drug dog followed Stokes. (R. & R. 2-3). After observing Stokes' vehicle drift over the fog line on the roadway, Officer Duvall stopped Stokes. (R. & R. 3).

During the stop, Stokes denied he had been drinking when asked by Officer Duvall. (R. & R. 3). Officer Duvall ran a records check on Stokes, which was negative. (R. & R. 3-4). Stokes was given a courtesy notice and again denied that he had been drinking. (R. & R. 4). Officer Duvall asked to search Stokes' vehicle, but Stokes declined to consent. (R. & R. 4). Officer Duvall then directed Stokes to exit the vehicle and told him to stand near the rear of the vehicle. (R. & R. 4). Stokes complied, leaving the driver side door open. (R. & R. 4). Deputy Hargett then approached Stokes' vehicle with his drug dog and led the dog around the vehicle. (R. & R. 4). The dog alerted and entered the vehicle, continuing to alert while inside. Deputy Hargett hand searched the vehicle and found a duffle bag with approximately six ounces of methamphetamine and $184,000 in cash inside. (R. & R. 4). From the time of the stop to the arrest, less than seventeen minutes elapsed. (R. & R. 7).

In seeking to suppress the evidence discovered during the traffic stop, Stokes argues that the stop ended upon Officer Duvall giving him the courtesy notice and that he should have been free to leave at that point. (Def.'s Obj. to R. & R. 1-2, 5, DN 76). Stokes claims that Officer Duvall continued to detain him when he was asked to exit the vehicle. (Def.'s Obj. to R. & R. 2). Stokes also argues that the United States could not base probable cause on the Informant's

tip and did not offer any proof of the police dog's reliability or training. (Def.'s Obj. to R. & R. 2-4, 6-7).

Officer Duvall testified that he did not observe any signs of criminal activity before the police dog was led around the vehicle. (R. & R. 4). The United States argues the totality of the circumstances justified Officer Duvall's extension of the traffic stop for the minimal amount of time it took the police dog to sniff the exterior of the vehicle and that the Informant's tip alone was enough to establish probable cause to search the vehicle. (R. & R. 7; Pl.'s Obj. to R. & R. 8, DN 72).

## II.     DISCUSSION

Stokes objects to the finding of probable cause to search his vehicle as determined by Magistrate Judge Brennenstuhl. In this regard, the U.S. Supreme Court has stated:

> A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present. The test for probable cause is not reducible to precise definition or quantification. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision. All we have required is the kind of fair probability on which reasonable and prudent people, not legal technicians, act.

*Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (alterations in original) (internal quotation marks omitted) (internal citations omitted).

Magistrate Judge Brennenstuhl correctly determined that the Informant's tip alone established probable cause to conduct a search of Stokes' vehicle. Officer Duvall did not receive the information concerning Stokes directly from the informant. Instead, this information was given to Officer Duvall by Detective Harper. Officer Duvall was entitled to rely on the information because of the collective knowledge doctrine, which allows investigating officers to

impute suspicions onto responding officers. *See United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012) (citations omitted).

"[T]ips from known or reliable informants are entitled to substantially more weight" than tips provided by unknown or unreliable informants. *United States v. Williams*, 483 F. App'x 21, 25 (6th Cir. 2012) (citations omitted). Although Officer Duvall did not hear the information directly from the informant, Officer Duvall's previous interactions with the Informant caused him to believe the Informant was providing reliable information. (Suppress Hr'g Tr. 40:15-41:6, Apr. 26, 2016, DN 54). "Probable cause may come from a confidential informant's tip, when sufficiently detailed and corroborated by the independent investigation of law enforcement officers." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1988) (citations omitted). If an informant has been proven to be reliable, information given from that informant is given substantially more weight than information from a person with unknown reliability. *See Williams*, 483 F. App'x at 25.

In this case, the Informant's tip was corroborated by law enforcement officers. The Informant told Detective Harper he had seen Stokes at the horse track in Franklin, Kentucky, described Stokes' vehicle, and claimed he had observed Stokes in possession of about $100,000 dollars in cash and six ounces of methamphetamine. Officers went to the horse track and confirmed that Stokes was at that location. The combination of the investigation corroborating the information and the Informant's known reliability gave Officer Duvall probable cause to further detain Stokes while the drug dog searched the vehicle.[1] *See United States v. Brooks*, No.

---

[1] Despite being put on notice that the United States would have to support the probable cause linked to the drug dog's alert, the United States did not present any evidence at the suppression hearing and instead attempts to introduce such evidence in its objection. (Pl.'s Obj. to R. & R. Ex. A, DN 72-1). As the Supreme Court has noted:

4

89-6283, 1990 U.S. App. LEXIS 17526, at *12 (6th Cir. Oct. 2, 1990) (showing the existence of probable cause to search a vehicle when a known informant provided information about the defendant, the type of car the defendant drove, the location of the defendant, and the time the defendant was at the location, which was then corroborated by law enforcement officers). For these reasons, the officers had probable cause for the stop based upon the Informant's tip and its corroboration.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED AND ADJUDICATED** that the Findings of Fact, Conclusions of Law, and Recommendation of the United States Magistrate Judge (DN 70) are **ACCEPTED AND ADOPTED IN THEIR ENTIRETY**, and Defendant's Objection (DN 72) and Plaintiff's Objection (DN 76) are **OVERRULED**.

**Greg N. Stivers, Judge**
**United States District Court**
September 9, 2016

cc: counsel of record

---

A defendant, however, must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses. The defendant, for example, may contest the adequacy of a certification or training program, perhaps asserting that its standards are too lax or its methods faulty. So too, the defendant may examine how the dog (or handler) performed in the assessments made in those settings. Indeed, evidence of the dog's (or handler's) history in the field, although susceptible to the kind of misinterpretation we have discussed, may sometimes be relevant . . . .

*Harris*, 133 S. Ct. at 1057. Because Stokes has not had the opportunity to challenge the dog's reliability and training, the Court will not allow the United States to supplement the record and finds that the United States failed to present evidence of probable caused based on the dog's alert.